# IN THE COURT OF APPEALS OF IOWA

No. 21-1381
Filed March 29, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JOSHUA DAVID KNUTSON,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Floyd County, Gregg Rosenbladt,

Judge.


        Joshua Knutson appeals his convictions for sexual abuse and incest.

**AFFIRMED.**


        Ronald W. Kepford, Winterset, for appellant.

        Brenna Bird, Attorney General, and Thomas E. Bakke, Assistant Attorney

General, for appellee.


        Considered by Bower, C.J., Badding, J., and Doyle, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**DOYLE, Senior Judge.**

Following a bench trial, Joshua Knutson was convicted of committing sexual abuse upon his young daughter. He was also convicted of committing incest. On appeal he contends the trial court abused its discretion in failing to grant his motion for new trial. He also contends there is insufficient evidence to support the verdict. We conclude the trial court did not abuse its discretion by denying Knutson's motion for new trial and that sufficient evidence supports Knutson's convictions. So, we affirm.

Before addressing the merits, we mention some of Knutson's appellate rules violations. His brief lacks a statement of the facts section. Iowa R. App. P. 6.903(2)(f) ("The statement shall recite the facts relevant to the issues presented for review. All portions of the statement shall be supported by appropriate references to the record or the appendix in accordance with rule 6.904(4)."). The brief's statement of the case and argument sections make not one reference to the record or the appendix in accordance with Iowa Rule of Appellate Procedure 6.904(4). *See* Iowa R. App. P. 6.903(2)(e), (g)(3). Among other things, rule 6.904(4) requires references to the appendix page or pages at which those parts of the record appear in the appendix. The rule also requires reference to the original page and line numbers of the transcript. And if references are made in the brief to parts of the record not reproduced in the appendix, the reference must be made to the pages and parts of the record involved. *See* Iowa R. App. P. 6.903(4).

As we have said:

> Rule infractions are not a trivial matter. A party's disregard of the rules may lead to summary disposition of the appeal or waiver of an issue. Additionally, we refuse to assume a partisan role and undertake a party's research and advocacy when a party's failure to follow the rules would require us to do so to reach the merits of the case. Furthermore, this court's principal role is to dispose justly of a high volume of cases. A party's noncompliance with the rules of procedure hinders our effort to meet this mandate. On the other hand, observance of the rules promotes judicial efficiency because uniformity and consistency ease navigation and analysis of the thousands of briefs the court makes its way through each year.

*State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013) (footnote omitted) (internal citations omitted). Furthermore, judges are not like pigs, searching for truffles buried in the record. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also Brown v. Allen*, 344 U.S. 443, 537 (1953) (Jackson, J., concurring) ("He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search."). We need not search a record to verify unreferenced facts. *See Channon v. United Parcel Serv., Inc.*, 629 N.W.2d 835, 866 (Iowa 2001). But the law favors resolution of disputes on their merits, not through procedural defaults. *See, e.g.*, *Lincoln Sav. Bank v. Emmert*, ___ N.W.2d___, ___, 2023 WL 2192908, at *6 (Iowa 2023); *MC Holdings, L.L.C. v. Davis Cnty. Bd. of Rev.*, 830 N.W.2d 325, 328 (Iowa 2013) ("Our legal process[] normally strive[s] to resolve disputes on their merits."); *Peterson v. Eitzen*, 173 N.W.2d 848, 853 (Iowa 1970) ("We have often stated our strong preference for determination of cases on their merits."). In any event, we need not rest our resolution on appellate rules infractions as we conclude Knutson's arguments fail on their merits.

In 2020, Knutson's daughter first reported the abuse to her mother. The State subsequently charged Knutson with four counts of second-degree sexual abuse of a child under the age of twelve, in violation of Iowa Code sections 709.1, 709.3(2), and 903B.1 (2012).[1] Count 1 identifies calendar year 2009 as the date of occurrence; Count 2, calendar year 2010; Count 3, calendar year 2011; and Count 4, calendar year 2012. Count 5 is a charge of incest, covering the years 2009 through 2012, in violation of Iowa Code sections 726.2 and 903B.2. Knutson pled not guilty and waived jury trial. He was found guilty on all five counts after a bench trial. Knutson's combined motion for new trial and motion in arrest of judgment was denied by the trial court. He was sentenced to incarceration for an indeterminate term not to exceed twenty-five years on each of the four sexual abuse counts, to be served consecutively. He was sentenced to incarceration for an indeterminate term not to exceed five years on the incest count, to be served concurrently with the sexual-abuse sentences. On appeal he contends the trial court abused its discretion in failing to grant his motion for new trial. He also contends there is insufficient evidence to support the verdict.

The child testified the sexual abuse began when she was around five or six years old, while she was in kindergarten. The incidents occurred about once or twice per week and continued until Knutson moved out of the family home in 2012, when the child was in second grade. During this period, Knutson was a stay-at-

---

[1] Although the State charged Knutson for acts that occurred from 2009 through 2012, most of the statutes at issue were unaltered during that time. Only sections 903B.1 and .2 were amended, effective July 1, 2009, to add language about parole and work release. *See* 2009 Iowa Acts ch. 119, §§ 59, 60 (codified at Iowa Code §§ 903B.1, .2 (Supp. 2009)). We cite the 2012 Iowa Code for ease of reference.

home parent while the child's mother worked outside the home. The child was seventeen years old and in eleventh grade when she testified at trial. Knutson also testified at trial and denied the abuse ever happened. After hearing all the evidence, the trial court made detailed and comprehensive findings of fact that included its assessment of the credibility of the witnesses and found Knutson guilty as charged on all five counts.

Knutson moved for a new trial claiming the verdict contradicted the weight of the evidence. In support of his motion, he argued the "child made inconsistent statements," "refused to answer questions on cross examination," and "couldn't recall many facts associated with this matter on cross examination." He pointed out that the child admitted there was no bruising even though she claimed Knutson would tie her wrists and ankles. He noted the mother, who participated in the child's bath time, did not see any bruising. He emphasized that there was no testimony the child was afraid to be around him or refused to be left alone with him. And in addressing other testimony, Knutson argues the evidence contradicts any abuse occurring.

In denying the motion for new trial, the court referred to its "fairly extensive" findings of fact that included "credibility assessments and a discussion of the evidence." There the court set out the child's detailed testimony describing the abuse. The court assessed her credibility:

> The Court was able to observe [the child] when she testified. [The child] was emotional. [The child] was serious. [The child] listened tentatively to questions and answered fully. It was difficult for [the child] to testify at times. [The child] was subdued. [The child] did not appear that she enjoyed testifying against her father in any respect. [The child]'s testimony was credible.

On the other hand, the court's observations of Knutson's testimony were:

> The Court observed the testimony of Joshua Knutson. He appeared to be very willing to testify. He was extremely attentive during the trial and appeared anxious to respond to [the child]'s allegations. His outward appearance was that of having some anxiety and he appeared eager to rebut the testimony of [the child]. He presented outwardly as a person who was baffled and confused at the allegations [the child] was making.

The court then set forth its analysis:

> As the Court found above, [the child]'s testimony was clear and consistent. [The child] was appropriately emotional and serious during her testimony. The testimony of [the child] was extremely detailed. There is no indication that as the investigation continued that [the child] made inconsistent statements. Observers of [the child]'s interviews saw her to be appropriately serious and emotional during the process, an observation that was also observed by the Court. [The child] appears to be intelligent and mature for her age with no memory problems. Her demeanor was appropriately serious. She did not appear to enjoy testifying against her father at all.
>
> Joshua Knutson also appears to be an intelligent person. He is clearly upset by the allegations made by [the child]. His denial of the allegations was consistent.
>
> The Court notes and finds that [the child's mother] was also a very credible witness. She appeared to be serious and appropriately emotional. Her testimony about [the child]'s initial reporting and her reaction to it was very credible.
>
> The Court notes and finds that when interviewed by Investigator [Bradley] Bilharz, Joshua Knutson did fail to report some obvious information, such as living at the address where [the child] indicated most of the abuse occurred. He was not entirely forthcoming in his interview with Investigator Bilharz.
>
> . . . .
>
> [The child] has no apparent vested interest in the outcome of this trial. Joshua Knutson offered as a possible explanation recent changes in [the child]'s situation, including her mother's remarriage and having a new child and [the child] potentially wanting attention. These factors were not mentioned at all by [the child] or her mother, and the Court believes this amounts to a guess on Mr. Knutson's part as to [the child]'s motivation. The Court sees no motive here for [the child] to testify falsely. There is no apparent benefit or gain for her doing so at all. The process of reporting, being interviewed and then testifying has likely not been enjoyable at all for [the child].
>
> In this particular case, the Court is struck that [the child] and her siblings have had little to no contact with the defendant since

2012. After the defendant and [the child's mother] split, they were fairly quickly divorced. The last visit between Mr. Knutson and the children appears to have been in December of 2012. Mr. Knutson's parental rights were subsequently terminated. Mr. Knutson testified that he tried to put the situation behind him. For several years, there have been no ongoing disputes or issues regarding contact, visitation, child support, or other issues which typically may cause tensions in the relationships following a divorce.

The record is clear that [the child] is a fairly introverted person. Her mother indicated that she spent time alone as a child, and had difficulty making friends. [The child] indicated that the COVID-19 pandemic and school being not in session created a situation where she had more time to think and ruminate about the past situation. She emotionally reported to her mother and was indicating emotional distress. The Court finds that these circumstances bolster and strengthen [the child]'s credibility.

On the other hand, Joshua Knutson was not fully revealing of some even basic information to Investigator Bilharz.

Joshua Knutson has huge motivation to deny the allegations made by [the child]. In the first place, such allegations are the type that no person would want to admit to, especially when the situation concerns their own child. The charges involve steep penalties. There are family and social consequences as well. Joshua Knutson has large motivation to deny the allegations made. The Court notes that the written argument of the defendant's attorney . . . does point out areas of the testimony (e.g., lack of injury or bruising, risk of being discovered, length of time before reporting, lack of brother noticing, among others) in arguing reasonable doubt, and the Court has fully considered those points as well in arriving at its decision.

After its cogent and in-depth analysis of the testimony given at trial, the court found:

that the testimony of [the child] is more credible and believable over the testimony and statements of the defendant. The Court finds that the testimony of [the child] establishes the guilt of the defendant beyond a reasonable doubt, and the Court is firmly convinced by her testimony.

In addressing Knutson's motion for new trial, the court employed the appropriate standard and concluded the verdict was supported by the weight of the evidence.

We review rulings on motions for new trial asserting a verdict contradicts the weight of the evidence for an abuse of discretion. *See State v. Ary*, 877 N.W.2d

686, 706 (Iowa 2016). District courts grant new trials only in exceptional circumstances. *See id.* at 705. An abuse of discretion occurs when a court exercises its discretion on clearly untenable grounds or to a clearly unreasonable extent. *See State v. Wickes*, 910 N.W.2d 554, 564 (Iowa 2018). A verdict is not contrary to the weight of the evidence unless "a greater amount of credible evidence supports one side of an issue or cause than the other." *Id.* at 570 (citation omitted).

The court thoroughly weighed witness credibility. *See Powers v. State*, 911 N.W.2d 774, 782 (Iowa 2018) ("In assessing a motion for new trial, the judge examines the weight of the evidence offered in the criminal trial, which includes a weighing of the credibility of the complaining witness."). It served as fact finder and, in that capacity, had the opportunity to weigh witness credibility during the criminal trial. *See Wickes*, 910 N.W.2d at 571 ("Wickes opted for a bench trial in this case, so the district court in reaching its verdict assessed the credibility of the witnesses."). Considering the court's detailed credibility findings, we conclude this was not the exceptional case warranting the grant of a new trial motion based on the weight of the evidence.

Although the district court makes its own credibility determinations under a weight-of-the-evidence standard, it "may grant a motion for new trial based on the weight of the evidence 'only if more evidence supports the alternative verdict as opposed to the verdict rendered.'" *State v. Ernst*, 954 N.W.2d 50, 60 (Iowa 2021) (citation omitted). We agree that "a greater amount of credible evidence" supports the verdict. *Id.* (citation omitted). Therefore, we discern no abuse of discretion in the trial court's ruling denying Knutson a new trial.

We turn to Knutson's assertion that insufficient evidence supports his conviction. We review challenges to the sufficiency of the evidence for correction of legal errors. *See State v. Heard*, 636 N.W.2d 227, 229 (Iowa 2001). A verdict is upheld if substantial record evidence supports it. *See id.* Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond reasonable doubt. *See id.* The court reviews the evidence in the light most favorable to the State, including legitimate inferences and presumptions that may be reasonably drawn from the record. *See id.* The court considers all record evidence not just the evidence supporting the verdict. *See id.*

Knutson raises the same criticisms of the evidence as he did in arguing the motion for new trial. The child's testimony is substantial evidence that Knutson committed second-degree sexual abuse. "A sexual abuse victim's testimony alone may be sufficient evidence for conviction." *State v. Donahue*, 957 N.W.2d 1, 10–11 (Iowa 2021). Claiming that such evidence "is not credible enough to convince a rational fact finder of his guilt beyond a reasonable doubt is unavailing for sufficiency of the evidence purposes." *Id.* Although Knutson disputed the child's account, "it is for the [fact finder] to judge the credibility of the witnesses and weigh the evidence." *State v. Laffey*, 600 N.W.2d 57, 59 (Iowa 1999). Given all the witness testimony and the inferences that a reasonable fact finder might draw, we conclude that there is sufficient evidence to support Knutson's convictions.

Because the trial court did not abuse its discretion in denying Knutson's motion for new trial and substantial evidence supports his convictions, we affirm.

**AFFIRMED.**